UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUAREZ CORPORATION INDUSTRIES; and MHE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>EARTHWISE TECHNOLOGIES, INC.; EARTHWISE INNOVATIONS, INC.; and BRUCE R. SEARLE, individually,<br><br>Defendants.<br>______________________________<br>EARTHWISE TECHNOLOGIES, INC. and BRUCE SEARLE,<br><br>Plaintiffs,<br><br>v.<br><br>SUAREZ CORPORATION INDUSTRIES,<br><br>Defendant. | Case No. C07-5577RJB<br>Case No. C07-2020RJB<br>(Consolidated)<br><br>ORDER<br>(1) GRANTING IN PART AND DENYING IN PART SCI'S AND MHE'S MOTION FOR SUMMARY JUDGMENT REGARDING TRADEMARK, LANHAM ACT, AND UNFAIR COMPETITION LIABILITY;<br>(2) GRANTING SCI'S MOTION FOR SUMMARY JUDGMENT ON SEARLE'S TRADE SECRET MISAPPROPRIATION CLAIM; AND<br>(3) GRANTING SCI'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT ON SEARLE'S BREACH OF AGREEMENT CLAIM |

This matter comes before the Court on SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67), SCI's Motion for Summary Judgment on Searle's Trade Secret Misappropriation Claim (Dkt. 70), and SCI's

Motion to Dismiss or in the Alternative for Summary Judgment on Searle's Breach of Agreement Claim (Dkt. 73). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein. Matters raised in the motions are suitable for decision without oral argument, and the requests for oral argument are therefore denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Unless otherwise indicated, the following facts are undisputed or taken in the light most favorable to Earthwise Technologies, Inc. ("Earthwise Technologies"), Earthwise Innovations, Inc. ("Earthwise Innovations"), and Bruce Searle (collectively "Earthwise"), the nonmoving parties: Suarez Corporation Industries ("SCI") markets and sells consumer products, including portable electric space heaters under the trademarks EDENPURE and SUN-TWIN. Mr. Searle became an Internet distributor of SCI's products in 2005 or 2006. Earthwise created four websites to sell SCI's new heaters, heater parts, and refurbished heaters bearing the brand names EDENPURE and SUN-TWIN: *edenpure-heater.com*, *edenpureoutlet.com*, *infraredappliances.com*, and *infraredheating.com*.

Sometime before May of 2007, Mr. Searle created a different quartz infrared heater, the ComfortZone heater. Mr. Searle's new heater led to a breakdown of the parties' distributorship agreement, and on October 22, 2007, Mr. Searle informed SCI in writing that he was terminating the distributorship agreement with SCI.

On October 19, 2007, Earthwise Technologies, Inc., and Bruce Searle filed a complaint requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. C07-5577RJB, Dkt. 1.

On December 18, 2007, SCI and MHE Corporation filed a complaint against Earthwise for trademark infringement, false designation of origin and unfair competition, cyberpiracy, violation of Washington's Consumer Protection Act, and unfair enrichment. C07-2020RJB, Dkt. 1.

On February 12, 2008, the two actions were consolidated. C07-5577RJB, Dkt. 30 (unless otherwise indicated, remaining references to the docket are to the docket of C07-5577RJB).

On February 14, 2008, the Court entered a preliminary injunction enjoining Earthwise's use of the EDENPURE and SUN-TWIN trademarks. Dkt. 32 at 14. The injunction was based, in part, on Earthwise's stipulations.

On March 7, 2008, Earthwise filed an answer in the consolidated action and asserted counterclaims for breach of agreement and misappropriation of trade secrets. Dkt. 36.

Three motions are pending before the Court and ripe for decision: First, SCI and MHE move for summary judgment on SCI's trademark infringement, unfair competition, and cyberpiracy claims, seeking a permanent injunction and an order transferring all domain names incorporating SCI's trademarks. Dkt. 67 at 16. In its response to this motion, Earthwise moves to strike Exhibit A to the Declaration of David A Lowe and moves for summary judgment. Dkt. 88 at 2. Second, SCI seeks summary judgment on Mr. Searle's counterclaim for misappropriation of trade secrets. Dkt. 70. Finally, SCI seeks summary judgment on, or dismissal of, Mr. Searle's counterclaim for breach of agreement. Dkt. 73.

## II. SCI AND MHE'S MOTION FOR SUMMARY JUDGMENT REGARDING TRADEMARK, LANHAM ACT AND UNFAIR COMPETITION LIABILITY

SCI and MHE move for summary judgment, contending that Earthwise Technologies, Earthwise Innovations, and Mr. Searle committed trademark infringement and cyberpiracy. Earthwise opposes the motion in three respects, contending that no trademark infringement occurred after January 30, 3008, that Earthwise Technologies is not liable for any trademark infringement, and that Mr. Searle is not personally liable for any trademark infringement.

Two threshold matters warrant the Court's attention before reaching the merits of this motion. First, Earthwise moves to strike evidence offered in support of the motion. Second, though not filed as a cross motion, Earthwise's response seeks partial summary judgment in favor of Earthwise.

### A. MOTION TO STRIKE

Earthwise moves to strike Exhibit A to the Declaration of David A Lowe in Support of SCI and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act and Unfair Competition Liability (Dkt. 67). Dkt. 88 at 2. Earthwise contends that Exhibit A consists of

emails that constitute hearsay. Exhibit A is extremely lengthy. Much of the exhibit concerns the time period before January 30, 2008, and Earthwise concedes that its actions caused consumer confusion during this time period. Therefore, the admissibility of much of Exhibit A is not before the Court.

In addition, the emails in Exhibit A are offered to demonstrate the apparent confusion of Earthwise customers and not to prove the truth of the matters asserted in the emails. For example, Earthwise moves to strike Exhibit 174 of Exhibit A. Dkt. 88 at 5. Exhibit 174 appears to consist of an email to Earthwise and Earthwise's response thereto. The original email is as follows: "I am interested in a dealership for your infrared heaters - Comfort Zone/Eden Pure. I have a retail store and sell outdoor wood furnaces. What would be the wholesale prices?" Dkt. 69-5, Exh. A at 50. Earthwise's response is as follows: "I have distributor information available for you, but unfortunately only have it in paper packet format. If you would like to send a mailing address, I can give you the distributor info packet." *Id.* The contents of this email and others like it are not offered to prove the truth of the matters asserted. The Court should therefore deny the motion to strike the emails contained in Exhibit A on this ground.

Earthwise contends that even if the emails were admissible, they are not credible because the identity of the authors and their affiliation with SCI, if any, is unknown and because the emails do not reveal the source of their confusion. To this end, Earthwise suggests that the source of confusion may be "an SCI site, advertising circular, discussion with friends, or other medium." Dkt. 88 at 2. Matters of credibility are resolved by the finder of fact. The Court does not weigh the probative value of evidence when deciding a motion for summary judgment. The Court should therefore deny the motion to strike in this respect.

Exhibit A also consists of usage statistics and purports to show the number of hits on Earthwise's websites that were generated by certain Internet searches. Earthwise contends that this evidence constitutes inadmissible hearsay and does not fall within an exception to the hearsay rule. Dkt. 88 at 3. SCI contends that Brook Foster identified this evidence as business records in his deposition. In the portion fo the deposition cited by SCI for this purpose, Mr. Foster testifies

that he printed out the statistics in response to discovery requests. Dkt. 102-2, Exh. A at 7. This testimony does not establish that the statistics are "kept in the course of a regularly conducted business activity" for purposes of Federal Rule of Evidence 803(6). In this respect, the motion to strike should be granted.

**B. EARTHWISE'S "CROSS MOTION"**

In its Response to SCI's Motion for Summary Judgment Regarding Trademark, Lanham Act and Unfair Competition Liability (Dkt. 88), Earthwise urges the Court to "render summary judgment that neither EWT nor Searle have any liability on on SCI's claims and that any customer confusion on the part of EWI ceased by January 30, 2008." Dkt. 88 at 2-3. This request for relief was not made by motion and was not noted in accordance with Local Rule CR 7(d)(3). SCI and MHE therefore have been deprived of a full and fair opportunity to respond. In addition, the response was filed after the deadline for filing dispositive motions. *See* Dkt. 45. Therefore, the Court declines Earthwise's invitation to consider or enter summary judgment in its favor.

Having determined these threshold issues, the Court now turns to the merits of SCI and MHE's motion, which seeks summary judgment as to whether Earthwise committed trademark infringement and cyberpiracy. These matters will be addressed in turn.

**C. TRADEMARK INFRINGEMENT**

SCI and MHE seek summary judgment on their claim for trademark infringement. Dkt. 67. Earthwise stipulates that certain content on five of Earthwise Innovation's Internet sites used to sell new heaters, parts, and refurbished heaters and service warranty claims resulted in customer confusion from October 23, 2007, to January 30, 2008. Dkt. 88 at 2-3. As to this period of time, summary judgment is proper.

Earthwise does not stipulate as to any customer confusion existing after January 30, 2008. *Id.* Furthermore, Mr. Searle and Earthwise Technology do not stipulate that they are culpable or liable for customer confusion caused by Earthwise Innovations. *Id.* Therefore, the remaining issues raised in SCI's motion are (1) whether any trademark infringement occurred after January

30, 3008, (2) whether Earthwise Technology is liable for any trademark infringement, and (3) whether Mr. Searle is personally liable for any trademark infringement.

**1. Trademark Infringement After January 30, 2008**

A claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, may be based on the use of a trademark that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of one person with another person. *See* 15 U.S.C. §§ 1114, 1125(a)(1). The test for "likelihood of confusion" is whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005). When analyzing the likelihood of confusion, courts consider the following eight factors, generally referred to as the *Sleekcraft* factors: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; and (8) likelihood of expansion. *Id.* at 631 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The test is fluid, and a plaintiff need not satisfy every factor if there is a strong showing as to some of the factors. *Id.* One or more of the factors may be deemed more important than others, depending upon the facts and circumstances of the case, and the eight factors are not exhaustive. *Brookfield Commc'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

If the alleged trademark infringement occurs on the Internet, courts consider three of the *Sleekcraft* factors, known as the "Internet trinity," to be the most important: (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). If those three factors suggest that confusion is likely, a finding of infringement will follow unless the other *Sleekcraft* factors "weigh strongly" against a likelihood of confusion. *Id*.

To determine whether SCI and MHE are entitled to summary judgment on their trademark infringement claims, the Court addresses first the Internet trinity and then the remaining *Sleekcraft* factors.

**a. Internet Trinity**

**i. Similarity of the Marks**

To determine the degree of similarity between the marks, courts examine the mark within the context of other identifying features to compare the marks' sight, sound, and meaning; and similarities weigh more heavily than differences. *Surfvivor*, 406 F.3d at 633; *Sleekcraft*; 599 F.2d at 351. In this case, Earthwise used SCI's EDENPURE and SUN-TWIN marks on Earthwise's websites and in Earthwise's domain names. Specifically, the domain names *edenpure-heater edenpureoutlet* are largely identical to SCI's marks, with the addition of the words "heater" and "outlet." Consideration of this factor favors SCI.

**ii. Relatedness of Goods or Services**

To determine whether the parties' goods are related, courts consider whether customers are "likely to associate" the goods and whether the buying public could reasonably conclude that the goods originate from the same source. *Surfvivor*, 406 F.3d at 633. If the marks are identical and are used with identical goods or services, "likelihood of confusion would follow as a matter of course." *Brookfield*, 174 F.3d at 1056.

The Ninth Circuit has cautioned against "overemphasiz[ing] differences in principal lines of business, as . . . 'the relatedness of each company's prime directive isn't relevant.'" *Id.* Rather, courts should focus on whether the consuming public is likely to associate the defendant's products with the plaintiff's mark. *See id.*; *see also Interstellar Starship Servs.*, 304 F.3d 936, 945-46 (computer circuit boards and the Rocky Horror Picture Show not related); *Sleekcraft*, 599 F.2d at 350 (high-speed waterskiing boats related to family-oriented recreational boats); *Toys "R" Us, Inc. v. Feinberg*, 26 F. Supp. 2d 639, 643 (S.D.N.Y. 1998) (toys and guns not related).

In this case, Earthwise and SCI both sell heaters, and there can be no dispute that SCI and Earthwise sell related goods.

**iii. Simultaneous Use of the Web to Market**

Both parties' use of the Internet as a marketing tool is "a factor that courts have consistently recognized as exacerbating the likelihood of confusion." *Brookfield*, 174 F.3d at 1057; *see also Sleekcraft*, 599 F.2d at 353 ("Convergent marketing channels increase the likelihood of confusion."). Both SCI and Earthwise simultaneously utilized the Internet to market their heaters, and consideration of this factor favors SCI.

**b. Remaining *Sleekcraft* Factors**

**i. Strength of the Marks**

A mark is "strong" if it is memorable and if the public would likely associate it with the mark's owner. *Brookfield*, 174 F.3d at 1058 (9th Cir. 1999). Analysis of this prong serves to determine the scope of trademark protection to which the mark is entitled; more unique marks are entitled to greater protection. *Surfvivor*, 406 F.3d at 631. Marks that have no commonly known connection with the product, whether the marks consist of common words or coined phrases, are considered the strongest marks. *See id.* at 631-32 (describing five categories of trademarks).

In this case, SUN-TWIN and EDENPURE are invented, unique terms that are entitled to more protection than if the terms were merely generic or descriptive.

**ii. Evidence of Actual Confusion**

Evidence of actual confusion by merchants, actual consumers, and non-purchasing members of the public constitutes strong evidence of likelihood of confusion. *Surfvivor*, 406 F.3d at 633; *Playboy Enterprises v. Netscape Communications*, 354 F.3d 1020, 1026 (9th Cir.2004) ("actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion"). A lack of evidence is considered "generally unnoteworthy," however, because actual confusion is difficult to prove. *Brookfield*, 174 F.3d at 1050.

SCI has submitted evidence suggesting that potential Earthwise customers continued to inquire as to the availability of SUN-TWIN or EDENPURE heaters after January 30, 2008, and may have been confused as to Earthwise's identity. *See* Dkt.102-2, Exh. E at 37-39; *see also* Dkt.

69-5, Exh. A at 64 (inquiry as to specifications of EDENPURE). This factor does not weigh substantially in favor of either party.

**iii. Degree of Consumer Care**

To determine the degree of care exercised by consumers when purchasing the parties' goods, courts consider whether a "reasonably prudent consumer" under the circumstances would take the time to distinguish between the goods. *Surfvivor*, 406 F.3d at 634. Where the goods in question are small and inexpensive, customers are likely to exercise very little care. *Id.*; *Brookfield*; 174 F.3d at 1060. If the goods are moderately priced, there is no clear standard for determining the degree of customer care. *Surfvivor*, 406 F.3d at 634.

In this case, the heaters cannot be characterized as inexpensive, and customers could therefore be expected to exercise some care when purchasing the heaters. There is also evidence in the record that Earthwise received inquiries from customers seeking to compare different heater models. On the other hand, one of Earthwise's sales people characterized Earthwise customers as elderly and confused. Dkt. 69-6, Exh. E at 126. Ultimately, there is insufficient evidence to establish the level of care exercised by Earthwise's customers, and consideration of this factor does not favor either party.

**iv. Defendants' Intent**

This factor favors plaintiffs where the defendant employed the mark with actual or constructive knowledge of the plaintiff's mark. *See Surfvivor*, 406 F.3d at 634. An absence of intent to infringe is not dispositive, however, because lack of malice is not a defense to trademark infringement. *Id.* If the alleged infringer adopts the mark and knows of its similarity to another mark, courts presume that the infringer will accomplish its purpose and confuse the public. *Sleekcraft*, 599 F.2d at 354. Similarly, in the Internet context, courts hold that the intentional registration of a domain name with knowledge of the other company's trademark weighs in favor of likelihood of confusion. *Brookfield*, 174 F.3d at 1059.

In this case, there is no issue of fact as to Earthwise's knowledge of SCI's SUN-TWIN and EDENPURE marks. This factor favors SCI.

**v. Likelihood of Expansion**

If the parties are already in competition to a significant extent, the likelihood of expansion factor is deemed relatively unimportant. *Id.* at 1060. In this case, the parties were in direct competition, and the likelihood of expansion is unclear. Consideration of this factor does not favor either party.

**c. Initial Interest Confusion**

Initial interest confusion is defined as "customer confusion that creates initial interest in a competitor's product." *Playboy Enterprises*, 354 F.3d at 1025. Initial interest confusion occurs when customers seek the holder of the trademark but are instead directed to the alleged infringer. While the customers may be only initially confused as to the identity of the trademark holder and may voluntarily continue to instead pursue the alleged infringer, the alleged infringer is said to have benefitted from goodwill developed by the holder of the trademark, which generated the customer's initial interest. *See Brookfield*, 174 F.3d at 1062.

In *Brookfield*, the Ninth Circuit provided the following fictional depiction of initial interest confusion:

> Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading-"West Coast Video: 2 miles ahead at Exit 7"-where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast. Nevertheless, the fact that there is only initial consumer confusion does not alter the fact that Blockbuster would be misappropriating West Coast's acquired goodwill.

*Id.* at 1064. The Ninth Circuit has recognized that use of metatags that are confusingly similar to a trademark can create initial interest confusion and constitute trademark infringement. *Id.* at 1065, 1045 ("Search engines look for keywords in places such as domain names, actual text on the web page, and metatags. Metatags are HTML code intended to describe the contents of the web site.").

In this case, there is evidence that customers conducting Internet searches for "edenpure" or "suntwin" would suffer initial interest confusion, even after January 30, 2008, because such searches would lead consumers to Earthwise's websites. For example, as of February 15, 2008, *edenpureoutlet.com* contained the following disclaimer:

> Copyright © 2006 E.I. Inc., ComfortZone™ Heaters EDENPURE™ is a trademark of Suarez Corparation [sic] Industries; SUN-TWIN™ is a registered trademark of MHE Corp. Earthwise Innovations Inc. is not affiliated with Suarez Corporation Industries or MHE Corp. Neither Suarez Corporation Industries nor NHE [sic] Corp endorsesor [sic] warrants any refurbished heaters or parts purchased on this site.

Dkt. 102-2, Exh. H at 178. As a result of the disclaimer, a Google search for "edenpure" or "suntwin," as of November 6, 2008, generated a ComfortZone website in the first page of results. *See* Dkt. 102-2, Exh. K.

**d. Conclusion Regarding the Occurrence of Trademark Infringment**

In this case, consideration of the Internet trinity and the remaining *Sleekcraft* factors favors SCI. Consideration of the Internet trinity strongly favors SCI because the trademarks at issue are identical, and Earthwise and SCI simultaneously sold related products marketed through the Internet. The remaining *Sleekcraft* factors slightly favor SCI because SCI's marks are unique and because there is no question as to Earthwise's knowledge of SCI's marks.

Moreover, Earthwise fails to create a genuine issue of material fact as to whether Earthwise's use of SCI's marks ceased on January 30, 2008. For example, as of February 15, 2008, *edenpureoutlet.com* claimed to be "America's source for EdenPURE™and SunTwin™ Parts and Refurbished Heaters," even though Earthwise was preliminarily enjoined "from buying and/or selling refurbished Edenpure or Sun-Twin heaters on the *edenpure-heater.com* and/or *edenpureoutlet.com* websites." Dkt.102-2, Exh. H at 181; Dkt. 32 at 14. Similarly, as of February 15, 2008, Earthwise continued to advertise its program to buy EDENPURE and SUN-TWIN heaters via *edenpure-heater.com* and to use SCI's marks on *infraredappliances.com, infrared-heating.com,* and *comfortzoneinfraredheaters.com*. Dkt.102-2, Exh. H at 179;. Dkt. 102-2, Exh. I at 186, 207, 229. In this respect the motion should be granted.

Having determined that trademark infringement occurred and that such infringement extended beyond January 30, 2008, the Court now addresses Earthwise's contentions as to which parties are liable for such infringement.

**2. Liability of Earthwise Technologies**

Earthwise Technologies opposes summary judgment on the grounds that Earthwise Technologies and Earthwise Innovations are separate and that Earthwise Technologies is not responsible for any trademark infringement. There is evidence in the record suggesting that Earthwise Technologies sells only to distributors and does not advertise or solicit distributors via the Internet. Dkt. 89 at 2; Dkt. 90 at 2. There is also evidence suggesting that the mission of Earthwise Technologies includes more than merely soliciting distributors. In a previous declaration filed with the Court, Mr. Searle described Earthwise Technologies as follows: "its purpose was to market and sell the new ComfortZone heater we had developed." Dkt. 13 at 3. Several of the websites at issue in this case were originally registered to Earthwise Technologies and bear the name Earthwise Technologies. C07-2020RJB, Dkt. 8-3, Exh. G at 2, 4, 6, 8, 10; Dkt. 102-2, Exh. G at 121; Dkt. 102-2, Exh. I at 216 ("EarthWise Technologies, Inc., Number 1 in EdenPure™ Heaters"). At this juncture, the responsibilities and involvement of Earthwise Technologies are unclear because the facts are not completely developed. As to Earthwise Technologies, the Court should therefore deny without prejudice SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67).

**3. Liability of Mr. Searle**

Mr. Searle contends that he cannot be held personally liable for any trademark infringement by Earthwise Technologies or Earthwise Innovations. Dkt. 88 at 5. An individual may be held personally liable under Section 43(a) of the Lanham Act for using in commerce, in connection with services, a name that is likely to confuse. *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1986). In addition, a corporate officer or director is personally liable for torts the officer authorizes or directs or in which the officer participates. *Id.*

SCI's motion does not distinguish among Mr. Searle, Earthwise Technologies, and Earthwise Innovations. While Mr. Searle may have acted in a manner that would subject him to personal liability, the Court cannot yet determine the extent of Mr. Searle's personal participation in or direction of actions amounting to trademark infringement. Therefore, the Court should deny SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67) as to Mr. Searle.

**D. CYBERPIRACY**

In SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67), SCI seeks summary judgment as to whether Earthwise committed cyberpiracy. A cybersquatter is liable under the Anticybersquatting Consumer Protection Act ("ACPA") to the owner of a protected mark if cybersquatter does the following:

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that–
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

15 U.S.C. § 1125(d)(1)(A). Bad faith is "an essential prerequisite" to an ACPA violation. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002). Congress has enumerated a nonexhaustive list of nine factors for courts to consider when determining whether bad faith is present:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). The ACPA also has a safe harbor provision: "Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Interstellar Starship*, 304 F.3d at 947.

Under the third factor enumerated above, there is, at least, a question of fact as to whether Earthwise's prior use of domain names was in connection with the bona fide offering of goods as a distributor for SCI. SCI contends that it only authorized use of two sites, and many sites went beyond the bounds of the distributorship because Earthwise was not a distributor of air purifiers or vacuums. Mr. Searle testified that he offered EDENPURE vacuums for sale for nine months and then assigned the website to Julius Toth and that he sold EDENPURE water filters over the Internet. Dkt. 102-2, Exh. B at 21-22; Dkt. 102-2, Exh. B at 22.; *but see* Dkt. 69-6, Exh. C at 27. This evidence is sufficient to create a genuine issue of material fact as to whether Earthwise's prior use of the domain names was in connection with the bona fide offering of goods.

Under the sixth factor above, Mr. Searle admittedly offered to sell some of the domain names at the time he terminated the distributorship. Dkt. 89 at 2. On the other hand, Earthwise contends that the additional websites were not acquired as a bargaining chip and were instead acquired in an effort to protect Earthwise from competition from other distributors. Dkt. 89 at 2.

Similarly, Earthwise's use of a banner to inform customers that Earthwise is not the owner of the SUN-TWIN and EDENPURE marks is subject to competing inferences. On the one hand, the disclaimer may evidence intent to clarify the distinction between Earthwise and SCI and a lack of bad faith. On the other hand, as a result of the disclaimer, a Google search for "edenpure" or "suntwin," as of November 6, 2008, generated a ComfortZone website in the first page of results.

Also, Earthwise contends that it maintained its websites after terminating the distributorship in order to maintain a presence for customers with warranty claims. While SCI may contest the extent to which Earthwise's use of SCI's marks served this purpose, the question of whether Earthwise acted in bad faith is a matter for the finder of fact at trial. The Court should therefore deny SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67) as to the cyberpiracy claim.

## III. SCI'S MOTION FOR SUMMARY JUDGMENT ON SEARLE'S TRADE SECRET MISAPPROPRIATION CLAIM

Mr. Searle asserts a counterclaim for misappropriation of trade secrets in violation of RCW 19.108 *et seq*. Specifically, Mr. Searle contends that he determined how to integrate a low-RPM scroll fan into SCI's EDENPURE and SUN-TWIN heaters, relocate the wiring to avoid the flow path, utilize contact plates to mount connection wires more securely, install a digital thermostat on the front of the heater, and employ an electrostatic filter. *See* Dkt. 84 at 2.

SCI moves for summary judgment as to all alleged trade secrets. Dkt. 70. In response, Mr. Searle opposes summary judgment only as to the scroll fan. *See* Dkt. 84 at 2 n.1 ("Bruce Searle is not pursuing claims for the location of wiring, contact plates, front digital thermostat and electrostatic filter, although they are all trade secrets which SCI did misappropriate from Searle."). As to the relocation of wiring, the contact plates, the digital thermostat, and electrostatic filter, summary judgment should therefore be granted.

As to the scroll fan, SCI seeks summary judgment on the grounds that the alleged trade secret is generally known or readily ascertainable, was not subject to reasonable efforts to

maintain secrecy, and was disclosed freely without restriction or expectation of compensation. Dkt. 70.

The Washington Uniform Trade Secrets Act, RCW 19.108 *et seq.*, prohibits misappropriation of trade secrets. By statute, misappropriation is defined as follows:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (i) Used improper means to acquire knowledge of the trade secret; or
>
> (ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was (A) derived from or through a person who had utilized improper means to acquire it, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RCW 19.108.010(2). Trade secrets are defined as follows:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

Mr. Searle fails to articulate any "formula, pattern, compilation, program, device, method, technique, or process" used to integrate the scroll fan into SCI's heaters. In a declaration filed in opposition to SCI's motion, Mr. Searle contends, "My concept and design were not known to the general public." Dkt. 85 at 5. Mr. Searle's deposition testimony undermines this conclusory statement. In his deposition, Mr. Searle described his alleged trade secret as follows:

> Q. Okay. And so you're saying it required some modification of the case to allow a cylindrical tunnel scroll fan to be placed in the case to replace the axial fan; is that right?
>
> A. Correct.
>
> Q. Okay. And any number of engineers could have done that, but it's your contention that you're the one that came to SCI and showed them how to do that and that was the trade secret?

> A. What I'm saying is that if they had gone to another engineering firm and paid that engineering firm to redesign their heater with the scroll fan in the back, most undoubtedly another engineering firm could have found a way to do it, but that engineering firm would have also entered into an agreement with them and been compensated for the work. And the problem we've got here is no engineering firm out there told them that they needed a scroll fan in the unit. I told them. I then designed the heater around the new modifications and installed the scroll fan in the heater.
>
> Now, could another engineering firm have done that, possibly, but they would have had to have done it and been compensated for it. I did not receive the compensation for what I provided to them under contract. So if that was a trade secret, yes, it was mine. I designed it.

Dkt. 71-2, Exh. A at 9. Moreover, Mr. Searle testified that "[m]illions of manufacturers use scroll fans in their heater units." Dkt. 71-2, Exh. A at 7. Mr. Searle fails to create a genuine issue of material fact as to whether incorporation of a scroll fan into SCI's heaters derives independent economic value from not being generally known to or readily ascertainable. The Court should therefore grant SCI's Motion for Summary Judgment on Searle's Trade Secret Misappropriation Claim (Dkt. 70).

## IV. SCI'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT ON SEARLE'S BREACH OF AGREEMENT CLAIM

Mr. Searle alleges two counterclaims in this consolidated action. First, Mr. Searle alleges that SCI breached an agreement concerning the development of a "SolarZone" heater unit. Dkt. 36 at 5. Second, Mr. Searle alleges misappropriation of trade secrets. *Id.* at 6. SCI moved separately for summary judgment on the trade secret misappropriation claim (Dkt. 70) and to dismiss or, alternatively, for summary judgment the breach of agreement claim (Dkt. 73). Counsel for Mr. Searle filed a document indicating that Mr. Searle does not oppose the relief requested in SCI's motion to dismiss or, alternatively, for summary judgment on the breach of agreement claim, and has abandoned his counterclaim for breach of agreement. Dkt. 87. Accordingly, the Court should grant SCI's motion to dismiss the breach of agreement counterclaim.

The Court notes, however, that in opposition to SCI's Motion for Summary Judgment on Searle's Trade Secret Misappropriation Claim (Dkt. 70), Mr. Searle appears to contend that he has a third counterclaim for breach of the parties' Confidentiality and Non-Disclosure Agreement. Dkt. 84 at 9. While Mr. Searle's answer does contain allegations regarding the Confidentiality

and Non-Disclosure Agreement, it is not clear from the face of the answer that Mr. Searle seeks to allege a claim for breach of that agreement. In any event, SCI's motions did not address such a claim, and the Court therefore does not reach this issue.

## V. CONCLUSION

The Court having determined that there are issues of fact as to the activities of Mr. Searle and of Earthwise Technologies in infringing upon SCI and MHE's trademarks and as to Earthwise's bad faith, summary judgment should be denied in this respect. Because Mr. Searle fails to create a genuine issue of material fact as to whether his knowledge of how to integrate a scroll fan into SCI's heaters constitutes a trade secret, summary judgment denying Mr. Searle's counterclaim for misappropriation of a trade secret should be granted. Furthermore, pursuant to Mr. Searle's nonopposition to the motion for summary judgment on his breach of agreement counterclaim, that counterclaim should also be dismissed.

In their proposed order, SCI and MHE request a permanent injunction, and SCI requests an assignment or transfer of all domain names incorporating the EDENPURE or SUN TWIN marks. Because this order does not decide whether Earthwise Technologies or Mr. Searle committed, or are responsible for, trademark infringement and does not dispose of SCI's cyberpiracy claim, these requests are premature.

## VI. ORDER

Therefore, the Court does hereby **ORDER** as follows:

SCI's and MHE's Motion for Summary Judgment Regarding Trademark, Lanham Act, and Unfair Competition Liability (Dkt. 67) is **GRANTED in part** and **DENIED in part** as follows:

(1) As to trademark infringement and unfair competition by Earthwise Innovations, Inc., the motion is **granted**;

(2) As to trademark infringement and unfair competition by Earthwise Technologies, Inc., the motion is **denied;**

(3) As to trademark infringement and unfair competition by Bruce Searle, the motion is **denied**; and

(4) As to cyberpiracy, the motion is **denied**.

It is further **ORDERED** that

(1) SCI's Motion for Summary Judgment on Searle's Trade Secret Misappropriation Claim (Dkt. 70) is **GRANTED** and that claim is dismissed.

(2) SCI's Motion to Dismiss or in the Alternative for Summary Judgment on Searle's Breach of Agreement Claim (Dkt. 73) is **GRANTED**, and Mr. Searle's counterclaims for breach of agreement and trade secret misappropriation are **DISMISSED**.

(3) Earthwise's motion to strike, contained in its response (Dkt. 88), is **GRANTED** as to usage statistics contained in Exhibit A and is **DENIED** as to emails contained in Exhibit A.

(4) Earthwise's cross motion for summary judgment, contained in its response (Dkt. 88), is **DENIED**.

DATED this 14th day of November, 2008.

ROBERT J. BRYAN
United States District Judge